UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN H. LANDINO,<br><br>Plaintiff,<br><br>vs.<br><br>MASSACHUSETTS TEACHERS ASSOCIATION, JOHN DOES 1-10,<br><br>Defendants | CIVIL ACTION NO.: 1:20-cv-11392-DJC |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT MASSACHUSETTS TEACHERS ASSOCIATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Massachusetts Teachers Association ("MTA"), moves to dismiss *pro se* Plaintiff John H. Landino's Complaint in its entirety for failure to state a claim upon which relief can be granted.[1]

**PRELIMINARY STATEMENT**

In this action, Plaintiff asserts a litany of claims arising from MTA's posting of a dossier on its public website about Project Veritas, an organization that conducts undercover investigations of and publishes reports about teachers' unions, among other entities. The dossier listed the names and photographs of people involved with Project Veritas. Plaintiff, who formerly worked as the Chief Operating Officer for Project Veritas, takes issue with the fact that his name and photograph were included in the dossier. Plaintiff also complains that the dossier hyperlinked to a March, 2014 Gawker article that he alleges contained erroneous information

---

[1] This is the second action Plaintiff has brought against MTA. He previously filed suit against MTA and other defendants in the Superior Court of New Jersey, captioned *John Landino v. Democracy Partners, et. al*, Docket No. BER-L-2582-20. On July 17, 2020, the Superior Court of New Jersey entered an Order granting MTA's motion to dismiss Plaintiff's Complaint against it for lack of personal jurisdiction and insufficiency of process.

about him, including that he had a felony narcotics record and owed thousands of dollars in back taxes and child support.

For the reasons more fully explained below, none of the nine claims that Plaintiff asserts in the Complaint state a viable cause of action upon which relief can be granted. In summary:

- Plaintiff asserts a claim for defamation (First Claim). However, the five allegedly defamatory statements that Plaintiff identifies in the Complaint are not actionable because they either are not concerning him, are substantially true on the face of the Complaint, are not capable of a defamatory meaning, and/or are too vague to be actionable. As for the Gawker article, MTA cannot be held liable for defamation under Massachusetts law simply for hyperlinking to a document that was published by another entity years earlier.

- Plaintiff asserts several claims under criminal statutes, including 18 U.S.C. § 241 (Second Claim), 18 U.S.C. § 1001 (Seventh Claim), and M.G.L. c.265, § 43 (Ninth Claim). However, Plaintiff has no standing to bring claims under these criminal statutes because they do not provide for a private right of action.

- Plaintiff asserts claims for conspiracy to interfere with constitutional rights under 42 U.S.C. § 1985 (Third Claim) and failure to prevent a deprivation of constitutional rights under 42 U.S.C. § 1986 (Fifth Claim). However, a viable conspiracy claim under Section 1985 requires a showing that racial or otherwise class-based discriminatory animus motivated the defendant's actions. The vague and conclusory facts alleged in the Complaint are insufficient to support a plausible conspiracy at all, much less one motivated by some class-based discriminatory animus. A valid Section 1985 claim is a predicate to a claim under Section 1986; therefore, Plaintiff's Section 1986 fails as well.

- Plaintiff asserts a claim under 42 U.S.C. § 1983 (Fourth Claim) for violation of his constitutional rights. However, a viable Section 1983 claim requires state action, and MTA is not a state actor. Moreover, Plaintiff has not identified any constitutional right that was allegedly violated by MTA (nor could he).

- Plaintiff asserts a claim for civil conspiracy (Sixth Claim). However, neither of the two theories of civil conspiracy recognized in Massachusetts are viable based on the facts alleged. The first theory applies only in the rare circumstance in which a plaintiff can show that the defendant exercised "some peculiar power of coercion" over him resulting from "mere force of numbers acting in unison." No such facts are alleged here. The second theory does not give rise to an independent cause of action at all, but instead provides that a defendant may be vicariously liable for the tortious actions of another party if those actions were part of a "common plan" or the defendant provided "substantial assistance or encouragement." However, Plaintiff's allegations are insufficient to establish any underlying tort, nor has he sufficiently alleged any "common plan" that MTA participated in or that MTA assisted some other party to commit a tort.

- Plaintiff asserts a claim for fraud (Seventh Claim), but the Complaint does not allege that MTA made any misrepresentation to Plaintiff that he relied upon to his detriment.

- Plaintiff asserts a claim for negligence (Eighth Claim), but the Complaint alleges no facts to suggest that MTA owed him a duty of care, or that he suffered any specific damages as a result of any action taken by MTA.

- Plaintiffs asserts a claim for harassment (Ninth Claim), but harassment is not a recognized tort in Massachusetts.

   Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

## SUMMARY OF ALLEGED FACTS

Though lengthy in prose and littered with seemingly irrelevant assertions, Plaintiff's core factual allegations are straightforward. Plaintiff was previously employed as the Chief Operating Officer for Project Veritas, which he describes as "a conservative media entity with long standing reports on and disputes with teachers' unions across the country." (Compl., Doc. 7, ¶ 18.) On March 7, 2014, online media company Gawker published an article about Plaintiff reporting him as having "a felony narcotics record, thousands of dollars in unpaid child support, and tens of thousands of dollars in IRS tax liens." (Ex. 4 to Compl., Doc. 7-4.)[2] In June 2018, a website called Project Veritas Exposed posted a profile about Plaintiff identifying him as the Chief Operating Officer of Project Veritas from 2013-2014 and quoting the aforementioned language from the Gawker article. (*Id.*) Project Veritas Exposed later updated Plaintiff's profile to note that "[o]n May 10th, 2016, a Pardons Panel for the State of Connecticut's Pardons and Paroles Board issued a full pardon for John Landino's unclassified felony conviction." (*Id.*) Plaintiff alleges that the Project Veritas Exposed website is published by Democracy Partners and American Family Voices, which Plaintiff describes as "powerful progressive liberal lobbying entities in Washington, D.C., whose clients include numerous teachers' unions." (Doc. 7, ¶¶ 27-28, 32.)

In June 2019, MTA posted a dossier on its website about Project Veritas. (Exs. 6 and 7 to Compl., Docs. 7-6 and 7-7.) The dossier listed the names and photographs of people involved with Project Veritas. (*Id.*) Plaintiff's name and picture were included, along with hyperlinks to

---

[2] Plaintiff acknowledges that he was convicted of a felony in Connecticut but claims he received a pardon in May 2016. (Doc. 7, ¶ 25.) Plaintiff also acknowledges that he owed tax arrears from post-divorce litigation in Family Court from 2005-2018 that he paid off at the end of 2018. (*Id.*, ¶ 31.)

his Facebook profile and the Gawker article. (*Id.*) Plaintiff claims that the dossier contains false statements and specifically identifies the following statements as allegedly false:

- "People involved with Project Veritas often use disguises and misrepresent themselves" (Statement 1).

- Plaintiff is identified as the "COO" of Project Veritas (Statements 2 and 4).

- Plaintiff is included on a list of "People involved in right-wing undercover operations and organizations" (Statement 3).

- Plaintiff's name is hyperlinked to the aforementioned Gawker article (Statement 5).

(Doc. 7, ¶¶ 41-45; Doc. 7-6.) Plaintiff claims that he has suffered unspecified harm as a result of the posting of the dossier and further alleges, without identifying any specific facts in support, that this was part of some broader conspiracy between MTA, Democracy Partners, American Family Voices, and possibly the National Education Association, a labor union affiliated with MTA. (Doc. 7, ¶ 57.)

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a complaint must state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

While a *pro se* complaint is "held to less stringent standards than formal pleadings drafted by lawyers" and accorded "an extra degree of solicitude," even a *pro se* plaintiff is required to "set forth factual allegations, either direct or inferential, respecting each material

element necessary to sustain recovery under some actionable legal theory." *Tierney v. Town of Framingham*, 292 F. Supp. 3d 534, 540-41 (D. Mass. 2018) (citations omitted).

Even under the more liberal standard applied to *pro se* litigants, none of Plaintiff's claims state a viable cause of action upon which relief can be granted. Therefore, his Complaint should be dismissed with prejudice.[3]

## ARGUMENT

**I. Plaintiff's First Claim Fails To State A Cause Of Action For Defamation Because He Has Not Identified Any Statement That MTA Made Concerning Him That Was Both False And Damaging To His Reputation.**

Plaintiff's First Claim alleges defamation. To establish a claim for defamation under Massachusetts law, a plaintiff must show that: (1) the defendant made a statement concerning him to a third party; (2) the statement could damage the plaintiff's reputation in the community; (3) the defendant was at fault in making the statement; and (4) the statement either caused the plaintiff economic loss, or is actionable without proof of economic loss. *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-630 (2003). To be defamatory, a statement must "tend to hold the plaintiff up to scorn, hatred, ridicule or contempt in the minds of any considerable and respectable segment in the community." *Phelan v. May Dep't Stores Co.*, 443 Mass. 52, 56 (2004). A statement must also be fact, rather than opinion, to be actionable. *See King v. Globe Newspaper*, 400 Mass. 705, 709 (1987) (holding that a defamation claim is not actionable "if the

---

[3] Dismissal with prejudice is appropriate where, as here, it is apparent from the Complaint and exhibits attached to the Complaint that there are no factual bases upon which Plaintiff might state a claim that is plausible on its face. *See, e.g.*, *Solomon v. Khoury*, No. 16-10176, 2017 WL 598758, at *5 (D. Mass. Feb. 13, 2017) (dismissing *pro se* plaintiff's complaint with prejudice where "[r]eview of the allegations in Solomon's complaint and the various exhibits attached to that complaint establishes that there are no factual bases upon which he might state a claim to relief that is plausible on its face") (citation and internal quotation marks omitted); *Strahan v. AT&T Mobility LLC*, 270 F. Supp. 3d 535, 544 (D. Mass. 2017) (granting motion to dismiss *pro se* plaintiff's complaint and denying leave to amend as futile because amendment would fail to state a claim upon which relief can be granted).

challenged statement cannot reasonably be construed as a statement of fact"). A statement that is true or substantially true is not actionable as defamation. *Dulgarian v. Stone*, 420 Mass. 843, 848 (1995); *Reilly v. Associated Press*, 59 Mass. App. Ct. 764, 770 (2003).

Defamation claims are subject to a heightened pleading standard. "The Massachusetts Supreme Judicial Court has stated that defamation is traditionally a disfavored action, and that 'courts have applied a stricter standard to complaints for defamation by requiring defamation plaintiffs to plead the elements of their claims with specificity in order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).'" *Dorn v. Astra USA*, 975 F. Supp. 388, 395-96 (D. Mass. 1997), *quoting Eyal v. Helen Broadcasting Corp.*, 411 Mass. 426, 432 n.7 (1991). "To survive a motion to dismiss, a defamation plaintiff must plead: (1) the general tenor of the libel or slander claim, along with the precise wording of at least one sentence of the alleged defamatory statement(s); (2) the means and approximate dates of publication; and (3) the falsity of those statements." *Id.* (citations omitted).

Plaintiff fails to state an actionable claim for defamation. As an initial matter, the only allegedly defamatory statements Plaintiff identifies that are specifically "concerning" him are Statements 2 and 4 in the Complaint, the two references to Plaintiff as the "COO" of Project Veritas. (Doc. 7, ¶¶ 42 and 44; Ex. 6 to Compl., Doc. 7-6.) On the face of the Complaint, this statement is substantially true, as Plaintiff avers that he was, in fact, previously employed as the COO of Project Veritas. (Doc. 7, ¶ 4.) Though he denies any current affiliation with Project Veritas, the dossier includes an express disclaimer stating that "some people who are not operatives may coincidentally have the same name, and some people may no longer be acting as or facilitating operatives." (Doc. 7-6, at 12.). Beyond this, simply identifying Plaintiff as the COO of an organization is not a statement that is capable of a defamatory meaning, because it

does not hold him up to "scorn, hatred, ridicule or contempt in the minds of any considerable and respectable segment in the community." *Phelan*, 443 Mass. at 56.

Statements 1 and 3 alleged in the Complaint are not "concerning" Plaintiff specifically – instead, they are statements describing Project Veritas's operations as a whole. (Doc. 7-6, at 1, 12.) While an individual can maintain a cause of action based on "group defamation" in some circumstances,[4] Plaintiff cannot do so here because the statements at issue accurately describe Project Veritas and therefore are substantially true. Statement 1 indicates that "people involved in Project Veritas often use disguises and misrepresent themselves," and Statement 3 identifies those associated with Project Veritas as "[p]eople involved in right-wing undercover operations and organizations." *Id.* Project Veritas's own website confirms that it was established so that its founder could "continue his undercover reporting work," and that "Project Veritas journalists" work "undercover on their own or by, with and through idealistic insiders" purportedly to "bring to the American people the corrupt private truths hidden behind the walls of their institutions." (*See* https://www.projectveritas.com/about/.)[5] By definition, undercover work often involves "working secretly using a false appearance" to obtain information. (*See* https://dictionary.cambridge.org/us/dictionary/english/undercover.) Indeed, Plaintiff's Complaint does not allege that the statements in the dossier about Project Veritas are false, much

---

[4] In Massachusetts, as a general matter, defamation of a large group does not give rise to a cause of action by an individual member of that group unless the individual can show specific application of the defamatory statement to himself, while defamation of a small group (or a small part of a larger group) can give rise to a cause of action by an individual member. *Arcand v. Evening Call Pub. Co.*, 567 F.2d 1163, 1164-65 (1st Cir. 1977).

[5] The Court may consider the Project Veritas website on this Rule 12(b)(6) motion. "[F]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Sarvis v. Polyvore, Inc.*, No. 12-12233-NMG, 2013 WL 4056208, at *3 (D. Mass. Aug. 9, 2013).

less specify how they are false. Instead, Plaintiff appears to take issue with the fact that his name and picture were included in the dossier at all, claiming that he has had no contact or association with Project Veritas since he left his employment in 2014. These allegations are insufficient to state a claim for group defamation.

As for the label "right-wing," this adjective is too vague to be actionable as defamatory. This exact issue was addressed by the Second Circuit in the seminal case of *Buckley v. Littell*, 539 F.2d 882 (2d Cir. 1976). The defendant in *Buckley*, an author, wrote a book in which he referred to well-known publicist William H. Buckley as a "fellow traveler" of "fascism" and the "radical right" or "right wing." *Id.* at 890-91. The Second Circuit found that these terms had "tremendous imprecision" and were too "loosely definable" and "variously interpretable" to be actionable as defamation. *Id.* at 893, 895. Subsequent cases in Massachusetts have adopted the Second Circuit's reasoning. For example, in *National Association of Gov't Emp., Inc. v. Central Broadcasting Corp.*, 379 Mass. 220, 229-30 (1979), the Supreme Judicial Court, relying on *Buckley*, held that use of the label "communism" in reference to a police union was too vague to be actionable as libel. The same is true here.

Finally, MTA cannot be held liable for the allegedly defamatory statements about Plaintiff that were published in the March 2014 Gawker article hyperlinked in the dossier (Statement 5 in the Complaint, Doc. 7, ¶ 45.) Massachusetts follows the "single publication rule," which holds that the publication of a defamatory statement in an "aggregate manner" (e.g., to a crowd, broadcast by television or radio, printed in a newspaper or book) "is, in legal effect, one publication, although such publication is received by multiple third parties at the same time or consists of many copies widely distributed." *Wolsfelt v. Gloucester Times*, 98 Mass. App. Ct. 321, 151 N.E.3d 737, 743 (2020). "Rather than each copy giving rise to a separate cause of

action, the single publication rule treats the aggregate communication as one publication that gives rise to one and only one cause of action." *Id.*  In the recent *Wolsfelt* decision, the Massachusetts Appeals Court held, as a matter of first impression, that the single publication rule applies to Internet publications, thereby joining every other state and federal court to have addressed the issue. *Id.* at 744-45.  Applying the reasoning of *Wolsfelt* here, Plaintiff cannot maintain a cause of action against MTA for Statement 5.  Under the single publication rule, Plaintiff's sole cause of action for the allegedly defamatory statements in the Gawker article accrued against Gawker (*not* MTA) in March 2014, when that article was first published, and the statute of limitations has long expired.  *See* Mass. Gen. L. c.260, § 4 (applying a three-year statute of limitations to actions for libel or slander).

As the Appeals Court noted in *Wolsfelt*, there is a "republication exception" to the single publication rule under which a "future republication of the [alleged] false statements . . . could form the basis for a new cause of action against the republisher." *Id.* at 746.  However, "the application of the republication exception is complicated with regard to Internet publications because many websites are in a constant state of change, with information posted sequentially on a frequent basis." *Id.* at 746 n.12 (citation and internal quotation marks omitted).  As a result, applying the republication exception to any change of a website on the Internet would "foil the single publication rule, discourag[ing] the placement of information on the Internet or slow[ing] the exchange of such information, reducing the Internet's unique advantages [and] . . . forc[ing a publisher] either to avoid posting on a Web site or [to] use a separate site for each new piece of information." *Id.* (citation and internal quotation marks omitted).  For these reasons, the Appeals Court cited with approval decisions from other jurisdictions that have held that "minor or nonsubstantive changes to an Internet posting do not fall within the republication exception, but

-10-

substantive changes may." *Id.* (citing cases).  The republication exception does not apply here.  As Plaintiff states in the Complaint, MTA merely hyperlinked the Gawker article in the dossier where Plaintiff's name is referenced.  (Doc. 7, ¶ 45 and Exs. 6 and 7 to Compl., Doc. 7-6 and 7-7.)  Hyperlinking to a previously published article is not republication.  *See Wolsfelt*, 151 N.E.3d at 746, n.12 and cases cited therein.[6]

For all of these reasons, Plaintiff's defamation claim must be dismissed.

## II. Plaintiff's Second Claim Fails To State A Cause of Action Because 18 U.S.C. § 241 Is A Criminal Statute That Does Not Provide A Private Right of Action.

Plaintiff's Second Claim alleges a conspiracy against rights under 18 U.S.C. § 241.  However, 18 U.S.C. § 241 is a criminal statute that does not provide a private right of action upon which Plaintiff can rely for relief.  *McCray v. U.S. Postal Serv.*, No. 10-30171-MAP, 2011 WL 7429503, at *4 (D. Mass. Nov. 15, 2011), *citing Cok v. Cossentino*, 876 F.2d 1, 2 (1st Cir. 1989); *see also Mason v. Central Mass Transit Mgmt./Worcester Regional Transit Auth*, 394 F. Supp. 3d 166, 173 (D. Mass. 2019) ("Plaintiff mentions 18 U.S.C. § 241.  This is a criminal statute and there is no authority for permitting a private individual to initiate a criminal prosecution in his own name.") (citation and internal quotation marks omitted).  Therefore, this claim must be dismissed.

---

[6] For example, in *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 174-75 (3d Cir. 2012), a decision cited with approval by the Appeals Court in *Wolsfelt*, the Third Circuit held that neither a hyperlink nor reference to defamatory material in an Internet publication fell within the republication exception.  The Third Circuit cited several decisions from other courts that have considered the same issue, all of which held that linking to previously published material is not republication.  *Id.*

**III.     Plaintiff's Third And Fifth Claims For Violation Of 42 U.S.C. §§ 1985 And 1986 Fail To State A Cause of Action Because The Vague And Conclusory Facts Plaintiff Alleges Do Not Demonstrate A Conspiracy To Deprive Him Of Rights Motivated By Class-Based Discriminatory Animus.**

Plaintiff's Third Claim alleges a conspiracy to deprive him of his constitutional rights under 42 U.S.C. § 1985, and his Fifth Claim alleges failure prevent a violation of Section 1985 under 42 U.S.C. § 1986. Both causes of action fail to state a viable claim upon which relief can be granted.

The First Circuit has held that a claim for conspiracy under Section 1985 must contain the following four elements:

> First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right.

*Perez-Sanchez v. Public Building Auth.*, 531 F.3d 104, 107 (1st Cir. 2008), *citing Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Plaintiff fails to plausibly allege any of these elements.

As an initial matter, the Complaint is bereft of any facts plausibly supporting a conspiracy. "Pleading a section 1985(3) conspiracy requires at least minimum factual support of the existence of a conspiracy." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (citation and internal quotation marks omitted). "A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3)." *Id.* (affirming dismissal of Section 1985 conspiracy claim where plaintiff's complaint was devoid of facts that would warrant an inference that an agreement to deprive her of her civil rights was made). "Bald claims of a conspiracy among defendants are insufficient." *Hayward v. Massachusetts*, No. 16-cv-30046-MGM, 2016 WL 11189805, at *13 (D. Mass. Nov. 14, 2016), *report and recommendation adopted*, 2017 WL 772323 (D. Mass. Feb. 28, 2017). Plaintiff's conspiracy

allegations are entirely vague and conclusory – he does not identify any particular facts from which an inference could be drawn that MTA conspired with anyone to deprive him of any constitutional right.  *See id.* (holding that plaintiff failed to allege sufficient facts to establish a conspiracy even under the liberal standard applied to *pro se* complaints where his complaint was "devoid of the requisite particular facts from which it could reasonably be inferred that any of these three [defendants], or any others, agreed to deprive Plaintiff of his constitutional rights or that the [defendants] communicated or cooperated in further of this goal").

Next, Plaintiff fails to allege any class-based discriminatory purpose as required to satisfy the second element of a Section 1985 claim.  "It has long been established that a claim under § 1985(3) requires 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Id.*, *quoting Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Plaintiff does not allege any race-based animus on the part of MTA (nor could he).  Instead, he appears to claim that MTA is motivated by political ideology – he asserts (without any factual support) that MTA has "expressly aimed" its "political fund raising, lobbying, [at the] advocacy of progressive liberal causes and the vilification of those with conservative political views."  (Compl., Doc. 7, ¶ 13.)  However, the First Circuit held in *Perez-Sanchez* that "§ 1985(3) provides no remedy for animus on the basis of political beliefs."  *Id.* at 109.  In any event, Plaintiff denies any particular political affiliation, stating that he "is not a member or affiliated with any political entity or group."  (Compl., Doc. 7, ¶ 23.)

Finally, Plaintiff's Complaint fails to identify any overt act in furtherance of the vague conspiracy he alleges, nor does he identify any tangible injury or deprivation of a constitutional right.  *See Hayward*, 2016 WL 11189805, at *13 (recommending dismissal of *pro se* plaintiff's

Section 1985 claim where his complaint did not allege any "overt act in furtherance of the conspiracy" and did not establish that he was deprived of any constitutional rights).

For all of these reasons, Plaintiff's 42 U.S.C. § 1985 claim must be dismissed.

Plaintiff's 42 U.S.C. § 1986 claim also fails. The "existence of a conspiracy actionable under section 1985" is a "prerequisite" to a claim under Section 1986. *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 218 (D. Mass. 1995). "In other words, a § 1986 claim must be predicated upon a valid § 1985 claim." *Oberg v. City of Taunton*, 972 F. Supp. 2d 174, 201 (D. Mass. 2013) (citation and internal quotation marks omitted). Because Plaintiff has failed to state a claim under Section 1985, his claim under Section 1986 must be dismissed as well.

**IV.    Plaintiff's Fourth Claim For Violation Of 42 U.S.C. § 1983 Fails To State A Cause Of Action Because MTA Is Not A State Actor And Plaintiff Does Not Allege A Violation Of Any Constitutional Right.**

Plaintiff's Fourth Claim alleges a deprivation of constitutional rights under 42 U.S.C. § 1983. "In order to state a claim under section 1983, the plaintiff 'must show that the alleged deprivation of [his] constitutional rights was committed by a person acting under color of state law.'" *Hanon v. Beard*, No. 06-10700-NMG, 2008 WL 8969314, at *6 (D. Mass. Mar. 27, 2008), *quoting Rodriques v. Furtado*, 950 F.2d 805, 813 (1st Cir. 1991). "A person acts under 'color of law' if he exercises power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (citations omitted). MTA is a labor union. It is well-settled that labor unions are not state actors. *Mason*, 394 F. Supp. 3d at 173, *citing Hovan v. United Brotherhood of Carpenters & Joiners*, 704 F.2d 641, 642-45 (1st Cir. 1983). Beyond that, Plaintiff fails to identify any constitutional right that was violated by the conduct alleged in his Complaint. Accordingly, Plaintiff's 42 U.S.C. § 1983 claim must be dismissed.

V.  **Plaintiff's Sixth Claim Fails To State A Cause Of Action For Civil Conspiracy Because The Vague And Conclusory Facts Plaintiff Alleges Fail To Show Either That MTA Exercised Some "Peculiar Power Of Coercion" Over Him, Or That MTA Knowingly Participated In A "Common Plan" With Others To Commit An Underlying Tortious Act.**

Plaintiff's Sixth Claim alleges civil conspiracy. Massachusetts recognizes two variants of a cause of action for civil conspiracy, so-called "true conspiracy" and conspiracy based on section 876 of the Restatement (Second) of Torts. *Taylor v. American Chemistry Council*, 576 F.3d 16, 34 (1st Cir. 2009); *Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 244 (D. Mass. 1999). For the reasons that follow, Plaintiff's Complaint fails to state a claim under either theory.

The first version of civil conspiracy, referred to as "true conspiracy," is a "rare" and "very limited" cause of action requiring a plaintiff to allege and prove that by "mere force of numbers acting in unison" the defendant exercised "some peculiar power of coercion of the plaintiff which any individual standing in a like relation to the plaintiff would not have had." *Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d at 244 (citations omitted). This cause of action has primarily been applied in cases of direct economic coercion. *Id.* Plaintiff's Complaint is wholly insufficient to make out a true conspiracy claim. Plaintiff alleges a vague conspiracy to publish false information about him, but there is no allegation that MTA and its alleged coconspirators had any "peculiar power of coercion" over Plaintiff achieved by "force of numbers," as is required to state a true conspiracy claim in Massachusetts. *See id.* at 245 (dismissing civil conspiracy claim where the plaintiff did not allege that the defendants had any power of coercion peculiarly focused against it). Indeed, the dossier posted by MTA that forms the basis for Plaintiff's claims did not target him specifically – to the contrary, it identified

a lengthy list of individuals believed to be associated with Project Veritas. (Ex. 6 to Compl., Doc. 7-6.)

The second version of civil conspiracy is not an independent cause of action, but instead "is a form of vicarious liability for the tortious conduct of others." *Taylor*, 576 F.3d at 35; *see also Mass. Laborers' Health & Welfare Fund*, 62 F. Supp. 2d at 244 (describing second theory of civil conspiracy as "more akin to a theory of common law joint liability in tort") (citation omitted). "Under this theory, a defendant may be held liable for actions done by others pursuant to a common design or with the defendant's substantial assistance or encouragement." *Id.* Here, Plaintiff appears to advance a "concerted action" theory. Thus, he must establish "a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result." *Grant v. John Hancock Mut. Life Ins. Co.*, 183 F. Supp. 2d 344, 363-64 (D. Mass. 2002). Liability under this theory "attaches (if at all) not because [parties] have acted in concert, but because, acting in concert, they have committed a tort, such as misrepresentation." *Mass. Laborers' Health & Welfare Fund*, 62 F. Supp. 2d at 245; *see also Taylor*, 576 F.3d at 35 ("Because it is vicarious liability, this type of civil conspiracy requires an underlying tort."). Therefore, Plaintiff must sufficiently plead an underlying tort before he can maintain a claim for civil conspiracy. As set forth herein, however, none of the claims in Plaintiff's Complaint state a claim upon which relief can be granted. *See Mass. Laborers' Health & Welfare Fund*, 62 F. Supp. 2d at 245 (holding that the plaintiff's "concerted action" theory of conspiracy necessarily failed because the plaintiff's amended complaint failed to state a claim under any tort theory). Beyond that, Plaintiff's allegations of a "conspiracy" between MTA and other entities is entirely vague and conclusory and do not establish the existence of any "common plan" to commit a tortious act known to the alleged

participants, nor does he claim that MTA provided "substantial assistance or encouragement" to some other party in committing a tortious act.

Accordingly, Plaintiff's civil conspiracy claim must be dismissed.

VI. **Plaintiff's Seventh Claim Fails To State A Cause of Action Because The Criminal Fraud Statute Upon Which He Relies Does Not Provide A Private Right of Action.  In addition, Plaintiff Fails To Allege Any Misrepresentation By MTA That He Relied Upon To His Detriment.**

Plaintiff's Seventh Claim alleges fraud.  Plaintiff specifically references 18 U.S.C. § 1001, a federal criminal statute.  As discussed above, criminal statutes do not provide a private cause of action and therefore Plaintiff has no standing to assert a claim under 18 U.S.C. § 1001. *Lundgren v. Universal Wilde*, 384 F. Supp. 3d 134, 136 (D. Mass. 2019).  For this reason alone, dismissal is warranted.

Plaintiff's fraud claim is deficient for other reasons as well.  Under Massachusetts law, a plaintiff alleging fraud must show that:

> (1) [the] defendant made a false representation of a material fact (2) with knowledge of its falsity (3) for the purpose of inducing the plaintiff to act thereon . . . (4) that the plaintiff relied upon the representation as true and (5) acted upon it to his damage.

*Dickey v. U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust*, No. 19-12504-FDS, 2020 WL 4474273, at *4 (D. Mass. Aug. 3, 2020) (citations omitted); *see also Balles v. Babcock Power Inc.*, 476 Mass. 565, 573 (2017) (same).  Under Rule 9(b) of the Federal Rules of Civil Procedure, a complaint alleging fraud must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  This requires a plaintiff to "state the time, place, and content of the alleged false or representations to state a claim for fraud."  *Dickey*, 2020 WL 4474273, at *4.  The Rule 9(b) heightened pleading standard applies to *pro se* litigants.  *Id.*

The allegations of Plaintiff's Complaint fall short of satisfying even the basic pleading standard, much less the heightened standard applicable to fraud claims. Plaintiff fails to allege that MTA made any misrepresentation of any kind to him. Nor does he allege that he relied to his detriment on any misrepresentation. *See id.* (dismissing *pro se* plaintiff's fraud claim because his complaint did not allege any misrepresentation by the defendants nor did it allege that he relied to his detriment on any misrepresentation).

Accordingly, Plaintiff's fraud claim must be dismissed.

**VII.    Plaintiff's Eighth Claim Fails To State A Cause Of Action For Negligence Because He Has Not Alleged Any Type Of Relationship Between Himself And MTA That Would Give Rise To A Duty Of Care, Nor Has He Alleged Any Damages Factually And Proximately Caused By MTA.**

Plaintiff's Eighth Claim alleges negligence under Massachusetts law. "A plaintiff claiming negligence must establish the basic elements of duty, breach of duty, cause in fact and proximate cause." *Brettel v. Omron Scientific Technologies, Inc.*, 302 F. Supp. 3d 460, 465 (D. Mass. 2018) (citation omitted). "It is settled that 'in order to maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty *towards the plaintiff*, which the defendant has left undischarged or unfulfilled.'" *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F. Supp. 93, 99-100 (D. Mass. 1990), *quoting Mounsey v. Ellard*, 363 Mass. 693, 696 (1973) (emphasis in original). "Whether a duty of care exists is a question of law, and an appropriate subject of a motion to dismiss pursuant to rule 12(b)(6)." *Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 41 (2009).

Plaintiff cannot maintain a negligence claim because he has failed to allege any type of relationship between himself and MTA that would give rise to a duty of care on the part of MTA to him. *See id.* at 42-43 (affirming dismissal under Rule 12(b)(6) on the basis that the defendant owed no duty to the plaintiff); *O'Meara v. New England Life Flight, Inc.*, 65 Mass. App. Ct. 543,

544 (2006) (same).  Plaintiff also has failed to allege any specific damages that were factually and proximately caused by MTA's posting of the dossier.  As a result, Plaintiff's negligence claim must be dismissed.

### VIII. Plaintiff's Ninth Claim Fails To State A Cause Of Action Because Harassment Is Not A Recognized Tort Under Massachusetts Law And Plaintiff Cannot Bring A Private Action For Criminal Harassment.

Plaintiff's Ninth Claim alleges harassment under Massachusetts law.  As the First Circuit has noted, "harassment is not a recognized tort under Massachusetts law." *Bogan v. City of Boston*, 489 F.3d 417, 422 n.3 (1st Cir. 2007).

In his Complaint, Plaintiff quotes from Mass. Gen. L. c. 265, § 43A, a criminal statute which defines harassment as "willfully and maliciously engag[ing] in a knowing pattern of conduct or series of acts over a period of time directed at a specific person, which seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress[.]"  Again, however, Plaintiff cannot bring a private right of action for violation of a criminal statute.  *See Cichocko v. Mass. Bay Community College*, No. 12-10728-GAO, 2013 WL 783068, at *11 (D. Mass. Feb. 28, 2013) ("Mass. Gen. L. c. 265, § 43A is a criminal harassment statute . . . as a private citizen, Cichocki does not have standing to initiate a criminal action against another.").

Accordingly, Plaintiff's harassment claim must be dismissed.

## CONCLUSION

For the reasons set forth above, MTA respectfully requests that the Complaint be dismissed in its entirety with prejudice.

Respectfully Submitted,

**MASSACHUSETTS TEACHERS ASSOCIATION**

By its attorneys,

/s/ *Justin L. Engel*
Kenneth M. Bello, BBO #036630
Justin L. Engel, BBO #683894
Bello Welsh LLP
125 Summer Street, Suite 1200
Boston, MA 02110
(617) 247-4100
kbello@bellowelsh.com
jengel@bellowelsh.com

Dated: December 7, 2020

# CERTIFICATE OF SERVICE

    I, Justin L. Engel, hereby certify that on December 7, 2020, I electronically filed the foregoing *Memorandum of Law in Support of Defendant Massachusetts Teachers Association's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* using the CM/ECF system, which will send notification of such filing to all registered participants, and further that I caused a paper copy to be delivered to Plaintiff at the following address:

    John H. Landino
    124 Rumson Road
    Rumson, NJ 07760

    /s/ *Justin L. Engel*
    Justin L. Engel