JOHN H. LANDINO, PROSE
124 Rumson Road
Rumson, NJ 07760
Telephone:  (201) 560-2500
Email:      john.landino@gmail.com


### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| JOHN H. LANDINO | DOCKET NO.: 1:20-cv-11392 |
| Plaintiffs, | **CIVIL ACTION** |
| v. | |
| MASSACHUSSETTS TEACHERS ASSOCIATION, John Does 1-10 | |
| Defendants. | |


## PLAINTIFF'S OPPOSTION OF DEFENDANT'S MOTION TO DISMISS

### I.  MATERIAL FACTS

Project Veritas (PV) is a conservative media entity with long standing reports on and disputes with teachers' unions across the county. In 2010, PV produced at story called "Teachers Gone Wild" about the New Jersey Education Association. During the 90 days Plaintiff worked at PV in 2014, there was no stories or investigations involving any teachers' unions.

1

On March 7, 2014, Gawker published a libelous and erroneous article smearing the Plaintiff followed shortly by Gawker filing for Bankruptcy for losing a Defamation case. Gawker reported Plaintiff was a convicted felon for narcotics, behind on tens of thousands in taxes and child support – erroneously portraying Plaintiff as a repugnant individual. On the same day,, Plaintiff was finally awarded full custody of his teenage daughters after a decade in Family Court trying to protect them. Plaintiff also owed no Child Support. Plaintiff's last day of work at PV was March 31, 2014, since this time until the present Plaintiff has had no contact, connection, association, or affiliation with PV nor any employee. Plaintiff is not a member or affiliated with any political entity or group.

In 2015, PV recorded the President of the United Teachers of Wichita admitting to physically assaulting children in the classroom and being protected by the union. This incident too resulted in a PV lawsuit also involving Ms. Lauren Windsor and 27.   Democracy Partners (DP). In May of 2016, Plaintiff received a full pardon for his 1993 Unclassified Felony conviction in Connecticut.

In May of 2016, Plaintiff petitioned the Gawker article authors via email to remove the defamatory content. The authors hired an attorney who refused to cooperate with my requests citing the company was still in Bankruptcy court. Democracy Partners (DP), American Family Voices (AFV) and Project Veritas

Exposed (PVE) are powerful progressive liberal lobbying entities in Washington, D.C., whose clients include numerous teachers' unions. DP, AFV and PVE combined to publish political opposition research, documents, and websites for their clients about PV's activities and employees.

In 2017, DP filed a lawsuit against PV. Also, in the same year AFT filed a lawsuit against PV – both cases are ongoing at present. In 2018, PV won a lawsuit in Massachusetts District Court concerning the right to record public employees which would include Massachusetts teachers. At the end of 2018, Plaintiff finally paid back all tax arrears – all arrearage accumulated from Family Court post-divorce litigation from 2005-2018 costing Plaintiff over $250,000 in legal fees. DP and AFV had one of their comingled principles, Ms. Lauren Windsor, publish a website called Project Veritas Exposed - https://www.projectveritas.exposed/ approximately in June of 2018.

PVE's website content focused solely on PV and its employees and investigators which also included a profile about the Plaintiff: https://www.projectveritas.exposed/john-landino as was the case through the filing of the complaint in this matter. As per Ms. Lauren Windsor's court testimony on September 9, 2020, she states the Plaintiff PVE profile was published June 26, 2018. PVE's Plaintiff's profile cites an erroneous and libelous Gawker article

portraying Plaintiff as repugnant individual, deadbeat dad, and tax scofflaw. However, the profile included an "Update" stating Plaintiff was no longer a convicted felon as of May 10th, 2016 – this "update" was done on June 26, 2018. The PVE Plaintiff profile also states my employment at PV ended in 2014.

In October 2018, DP and Ms. Lauren Windsor filed a complaint against PV with the Ohio Elections Commission which was dismissed. On June 21, 2019 the MTA published on their website a 15-page dossier about PV: https://massteachers.org/-/media/massteacher/files/conferences/nea-ra/project-veritas.pdf?la=en.

The PV dossier had libelous and erroneous information about the Plaintiff along with his picture and hyperlinks to his Facebook profile and the libelous and knowingly false Gawker article. The URL which the MTA posted the full PV 15-page dossier contains a pathway to the stored file "massteacher" > "files" > "conferences" > "nea-ra" > "project-veritas" – this strongly indicates that the PV 15-page dossier was shared with the NEA, which is "the largest labor union and the largest white collar representative in the United States" and "it almost exclusively supports the Democratic Party."

PV dossier untrue statement #1 – Plaintiff... "often uses disguises and misrepresents themselves." PV dossier untrue statement #2 – Plaintiff is the "COO"

of PV.  PV dossier untrue statement #3 – Plaintiff is "People involved in right-wing undercover operations and organizations." PV dossier untrue statement #4 – Plaintiff is the "COO" of PV. PV dossier untrue statement #5 – on page 12 Plaintiff name printed "John Landino (COO, PV)" with text "COO" hyperlinked to the knowingly libelous Gawker article: https://gawker.com/james-okeefe-employes-a-convicted-felon-1538633934  6 page 12

The MTA, DP, AFV and Ms. Lauren Windsor all knew on or before June 26, 2018 that I was not a convicted felon but in an act of extreme malice and retaliation they collectively conspired to linked my name to the erroneous Gawker article which was still live on the internet for the public to see. The Gawker article was removed from the internet in its entirety by the new owner of the Gawker property on March 30, 2020 after Plaintiff threatened legal action.

On April 29, 2020 Plaintiff filed a civil case against the MTA, DP, AFV and Ms. Lauren Windsor in Bergen County Superior Court of New Jersey. On July 17, 2020 Bergen County Superior Court dismissed the MTA from the suit for Diversity advising me to file against the MTA in Massachusetts. During the New Jersey court proceedings, the MTA admitted to posting the PV 15-page dossier on their website. MTA's counsel during oral argument admitted the MTA "had on its website a document created by an entity called Project Veritas Exposed."

MTA's counsel then responded to an email from the Plaintiff after the hearing deceptively stating he was sure who gave and wrote the PV 15-page dossier to them. Now a common theme emerges – a conspiracy to defraud the Plaintiff and the courts. In the New Jersey court proceedings, Mr. Ryan Leach, Esq., Deputy General Counsel of the MTA submitted an AFFIDAVIT but deceptively omits the origin and author of the PV 15-page dossier even though his counsel knows the author and origin.

Mr. Leach, Esq., appears to mislead the court again in #8 of his AFFIDAVIT stating the "MTA simply placed the Dossier on its website, which is generally accessible to its membership and the Public." The troubling questions start to mount – the URL for the MTA's publishing of the PV 15-page dossier indicates it was used in coordination with its partner union, the NEA, at a conference(s) as well. If the MTA and the NEA collectively distributed the PV 15-page dossier, then Mr. Leach, Esq., has committed perjury – a crime. This is precisely why the Plaintiff added John Does 1-10 as the deception from the defendant is wide ranging and material.

In the New Jersey court proceedings, Ms. Lauren Windsor of DP and AFV submitted an AFFIDAVIT where she also deceptively tells the court other than the "[Plaintiff PVE] profile…readily available online" they have never "published or

6

disseminated any statement of any kind referencing Mr. Landino." The MTA conspired with DP, AFV, Ms. Windsor and possibly the NEA and more to maliciously harm the Plaintiff as part of a larger political, ideological, and legal battle that has been raging continuously for over a decade.

Plaintiff's children attended high school in Massachusetts from 2017 through 2020 and were subjected to harm from the collective offenses intentionally committed to permanently destroy his reputation. Internet search engines placed the MTA PV 15-page dossier in the top selections when searching "John Landino", creating irreparable harm to the Plaintiff, his family and business. Besides the strong possibility that the MTA distributed the PV 15-page dossier with the NEA, the website analytics for the dossier url will yield additional concrete data of the breadth of the distribution of their fraudulent statements about the Plaintiff. lawsuit.

## II. <u>THE MOTIONS TO DISMISS MUST BE DENIED</u>

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted).

A document filed by a pro se party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). See also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, while "[p]ro se complaints are accorded an 'extra degree of solicitude . . . .' even a pro se plaintiff is required to 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Wright v. Town of Southbridge, 2009 U.S. Dist. LEXIS 12817, at *6-7 (D. Mass. January 15, 2009) (quoting Adams v. Stephenson, 1997 U.S.App. LEXIS 15371, at *2 (1st Cir. June 23, 1997)).

### III. THE FIRST CLAIM FOR RELIEF: DEFAMATION SHOULD NOT BE DISMISSED

Defamation is a term for a legal claim arising from harm to a person's reputation, which is caused by a false statement of fact communicated to a third-

party without privilege. Langadinos v. Bd. Of Trustees of Univ. of Massachusetts, 2013 U.S. Dist. LEXIS 141341, 2013 WL 5507042 (D. Mass. Sept. 30, 2013). To have a claim, a plaintiff is required to show that the false statement was "capable of damaging his or her reputation in the community and either caused economic loss or is actionable without proof of economic loss." White v. Blue Cross & Blue Shield of Mass., Inc., 809 N.E.2d 1034, 1036 (Mass 2004). Furthermore, "Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." Correllas v. Viveiros, 572 N.E.2d 7, 10 (1991), citing Merrill v. Post Publishing Co., 197 Mass. 185, 191-192 (1908).

The elements of a defamation claim are: a false and defamatory communication of and concerning the plaintiff which is published or shown to a third party. Carmack v. National R.R. Passenger Corp, 486 F.Supp.2d 58 (D.Mass 2007). Additionally, The statement either caused the plaintiff economic loss or was of the type that is actionable without proof of economic loss (defamation per se). Oberg v. City of Taunton, 972 F.Supp.2d 174, 205 (D. Mass. 2013). Under state common law, any libel is actionable per se. Sharratt v. Housing Innovations, Inc., 365 Mass. 141 (Mass. 1974).

As such, a plaintiff does not need to plead or prove economic losses in order to prevail on this claim. Additionally, Massachusetts recognizes libel per se when

determining whether a statement "could damage the plaintiff's reputation in the community" -- which is part of the consideration of whether the statement is defamatory. Albright v. Morton, 321 F. Supp. 2d 130 (D.Mass. 2004); Stone v. Essex County Newspapers, Inc., 367 Mass. 849 (Mass. 1975). "Libel per se in this context seems to encompass statements that charge the plaintiff with a crime, that allege the plaintiff has certain diseases, or that may prejudice the plaintiff's profession or business." Morton, 321 F. Supp. at note 3.

Recently, a Massachusetts Appellate court affirmed that false statements that were published by a business owner about a local selectman who allegedly used his position to advance his family's interests at the town's expense were defamatory. Van Liew v. Eliopoulos, 478 Mass. 1105 (2017). A $2.1 million defamation award was found for damage to reputation. Id.

In this case, it is specifically shown by the statements made that can clearly cause Plaintiff harm, given the current environment we are in see: "Police: Fall River man threw 82-year-old wearing Trump hat to the ground, violently kicked him" (June 4, 2020) < https://whdh.com/news/police-fall-river-man-threw-82-year-old-wearing-trump-hat-to-the-ground-violently-kicked-him/amp/ > (Link active as of December 21, 2020). Additionally, Prima-facie evidence has been presented above, the MTA knew I was not the current COO of PV, the MTA knew I was not using

disguises and misrepresenting myself, the MTA knew involved in right-wing undercover and organization, the MTA knew I was not a convicted felon but published on their website and possible with the NEA at conferences that I was all of the above.

Although it should not be required to proven, as a direct, legal and proximate result of the Defamation, Plaintiff have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to harm the Plaintiff. Further, Plaintiff is not, by any definition, a "public figure" and as such, does not need to prove "actual malice".

### IV.    THE SECOND CLAIM FOR RELIEF: THE MASSACHUSETTS CIVIL RIGHTS ACT SHOULD NOT BE DISMISSED

Section 11(I) of the Massachusetts Civil Rights Act ("the Civil Rights Act") states, in relevant part:

"[a]ny person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil

action for injunctive and other appropriate equitable relief as provided

for in said section, including the award of compensatory money

damages." Mass. Gen. Laws ch. 12 § 11I.

Section 11H defines an unlawful interference with rights as an interference

that takes place through "threats, intimidation or coercion," undertaken by "any

person or persons, whether or not acting under color of law." Mass. Gen Laws ch.

12 § 11H. In order to state a claim under the Civil Rights Act, a plaintiff must allege

that (1) he had a right under the constitution or laws of the United States or the

Commonwealth of Massachusetts; (2) that right was interfered with; and (3) the

interference occurred through threats, intimidation, or coercion by the defendant.

Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 337 (Mass. 1996); see

Meuser v. Fed. Express Corp., 564 F.3d 507, 516 (1st Cir. 2009) ("'Threat' . . .

involves the intentional exertion of pressure to make another fearful or

apprehensive of injury or harm. 'Intimidation' involves putting in fear for the

purpose of compelling or deterring conduct. ['Coercion' involves] the application

to another of such force, either physical or moral, as to constrain him to do against

his will something he would not otherwise have done.").

The test for whether a defendant's conduct is threatening, intimidating, or

coercive is objective and asks whether a reasonable person would consider the

conduct to be so. <u>Meuser</u> <u>v. Fed. Express Corp</u>., 564 F.3d 507, 520 (1st Cir. 2009).

The law does not require physical force or even a direct confrontation between a

plaintiff and a defendant in order for the defendant to be liable for threatening,

intimidating, or engaging in coercive conduct in violation of the Civil Rights Act.

<u>Buster </u>v. George W. Moore, Inc, 783 N.E.2d 399, 410 (Mass.,2003). ("The [Civil

Rights A]ct does not define actionable 'coercion.' . . . [W]e have recognized that

coercion may take various forms, and we have not limited its scope to actual or

attempted physical force."); <u>see also Redgrave v. Boston Symphony Orchestra, Inc.</u>,

502 N.E.2d 1375, 1379 (Mass. 1987) (recognizing economic coercion through

deprivation of rights due under contract). Defendants' unlawful actions as stated

above were intentional, willful, malicious, and/or done with reckless disregard to

harm the Plaintiff

### V.  THE THIRD CLAIM FOR RELIEF: 42 U.S. CODE § 1985. CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS SHOULD NOT BE DISMISSED

Section 1985(3) of the Civil Rights Act of 1964 provides a civil remedy for

conspiracies to interfere with constitutionally or federally protected rights when

motivated by invidiously discriminatory animus. <u>See Griffin v. Breckenridge</u>, 403

U.S. 88, 102-03 (1971). In <u>Brett v. Building Comm'r of Brookline</u>, 250 Mass. 73, 77

(1924), the court said: "The right to enjoy life and liberty and to acquire, possess

and protect property are secured to every one under the Constitution of Massachusetts and under the Constitution of the United States. These guaranties include the right to own land and *to use and improve it according to the owner's conceptions of pleasure, comfort or profit, and the exercise of liberty and the pursuit of happiness*" (emphasis supplied). Defendants' conduct "by threats, intimidation or coercion" interfered with Plaintiff's rights as discussed above.

Under Section 1985(3), a plaintiff must show: (1) a conspiracy; (2) an act in furtherance of the conspiracy; (3) an intent to deprive any person of the equal protection of, or equal privileges and immunities under, the law; and (4) a resulting injury to a legal right or privilege. See Great American Federal Savings & Loan Assoc. v. Novotny, 442 U.S. 366, 373 (1979) (quoting Griffin v. Breckenridge, 403 U.S. at 102). To state a claim under Section 1985(3), therefore, plaintiff much allege the existence of a conspiracy in fact, which the aforementioned facts do. The MTA and their coconspirators, by publishing knowingly false information about the Plaintiff, purposefully embargoed the Plaintiffs right to gainful employment, supporting his family and living free from fear of losing life, liberty, and the pursuit of happiness. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to harm the Plaintiff.

**VI.** **THE FOURTH CLAIM FOR RELIEF: 42 U.S. CODE § 1983.CIVIL ACTION FOR**
**DEPRIVATION OF RIGHTS SHOULD NOT BE DISMISSED**

Section 1983 provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress". "By the plain terms of § 1983, two − and only two − allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); 22 *see also, e.g.*, *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) ("A prima facie 23 case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; 24 and (2) the person who deprived him of that right acted under color of state or territorial law."). Second, he must allege that the person who has deprived him of 21 that right acted under color of state or territorial law." Id.

Even if the defendant did not act pursuant to a state statute, the plaintiff may still show that the defendant acted pursuant to a "custom or usage" that had the force of law in the state. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S. Ct.

1598, 26 L. Ed. 2d 142 (1970). Additionally, proving mental state is not a stated requirement for a valid 1983 claim.

The MTA and their coconspirators, by publishing knowing false information about the Plaintiff, purposefully embargoed the Plaintiffs right to gainful employment, supporting his family and living free from fear of losing life, liberty, and the pursuit of happiness. As a direct, legal and proximate result of Defendants' retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

## Vii. THE FIFTH CLAIM FOR RELIEF: 42 U.S. CODE § 1986.ACTION FOR NEGLECT TO PREVENT SHOULD NOT BE DISMISSED

Section 1986 imposes liability for negligence on persons who have knowledge of "wrongs visited upon persons, and although aware of the wrong, took no action." Thomas v. News World Communications, 681 F.Supp. 55, 72 (D.D.C. 1988). The statute "establishes unambiguously that a colorable claim under section 1985 is a prerequisite to stating an adequate claim for neglect to prevent under section 1986." Id. We have stated such a basis earlier and as such, now state a separate claim under section 1986.

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and

having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action. The MTA and their coconspirators, by publishing knowingly false information about the Plaintiff, purposefully embargoed the Plaintiffs right to gainful employment, supporting his family and living free from fear of losing life, liberty, and the pursuit of happiness. As a direct, legal and proximate result of the offence above, Plaintiff have sustained, and will continue to sustain, economic damages to be proven at trial. As a result of the MTA's actions, Plaintiff have suffered emotional distress, resulting in damages in an amount to be proven at trial.

## VII.    THE SIXTH CLAIM FOR RELIEF: CIVIL CONSPIRACY SHOULD NOT BE DISMISSED

Two kinds of civil conspiracy have been delineated in the decisions. See Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1563-1564 (1st Cir. 1994). The element of coercion has been required only if there was no independent basis for imposing tort liability - where the wrong was in the particular

combination of the defendants rather than in the tortious nature of the underlying conduct. See Neustadt v. Employers' Liab. Assur. Corp., 303 Mass. 321, 325 (1939).

However, another form of civil conspiracy, reflected in the Restatement (Second) of Torts s. 876 (1977), derives from "concerted action," whereby liability is imposed on one individual for the tort of another. Aetna Cas. Sur Co. v. P & B Autobody, 43 F.3d at 1564. See Gurney v. Tenney, 197 Mass. 457 , 466 (1908); Kyte v. Philip Morris, Inc., 408 Mass. 162 , 166 (1990).

Massachusetts law recognizes the tort theory of "common design" in which a defendant may be liable for the tortious acts of another. *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D.Mass.1981)."A common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement.". Id. To prove such a claim, two elements must be shown: first, that the defendant and others have agreed explicitly or implicitly to perform the act or achieve the particular result; second, that the defendant's "own conduct must be tortious." Id. This second kind of civil conspiracy, which does not require proof of coercion, may also be considered as a basis for relief. See Nelson v. Nason, 343 Mass. 220 , 222 (1961) (recovery allowed under concerted action

theory of s. 876(b) where the defendant's deliberate conduct caused another to engage in tortious activity).

The MTA and their coconspirators, by publishing knowingly false information about the Plaintiff, purposefully embargoed the Plaintiffs right to gainful employment, supporting his family and living free from fear of losing life, liberty, and the pursuit of happiness. As a direct, legal and proximate result of the offences above, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of the MTA's actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount to be proven at trial. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to harm the Plaintiff.

**VIII.** **The SEVENTH CLAIM FOR RELIEF: FRAUD SHOULD NOT BE DISMISSED**

The basic elements of a claim for fraud are summarized as "[T]o recover in an action for deceit, 'the plaintiff must prove "that the defendant [or its agent], made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [its] damage." International Totalizing Sys. v. PepsiCo, Inc., 29 Mass. App. Ct. 424, 431 (1990). See also Danca v.

Taunton Sav. Bank, 385 Mass. 1, 8 (1982) (citations omitted). See also Restatement (Second) of Torts § 525 (1977) ('One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation')."

The tort of fraud need only be proven by a "preponderance of the evidence." Federal fraud law is defined under 18 U.S.C. § 10011 as knowingly and intentionally doing any of the following: Falsifying, concealing, or covering up by any trick, scheme, or device a material fact; Making any materially false, fictitious, or fraudulent statement or representation; or Making or using any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry. The US Supreme Court has ruled in 3 separate cases to uphold the common law maxim: that Fraud Vitiates Everything. See Nudd v. Burrows, 91 US 426 (1875), (Fraud destroys the validity of everything into which it enters); Boyce's Executors v. Grundy, 3 Pet. (28 US) 210 (1830), (Fraud vitiates everything); and See United States v. Throckmorton, 98 US 61, 70 (1878) (Fraud vitiates the most solemn contracts, documents and even judgments).

Prima-facie evidence has been presented above, the MTA knew I was not the

current COO of PV, the MTA knew I was not using disguises and misrepresenting myself, the MTA knew involved in right-wing undercover and organization, the MTA knew I was not a convicted felon but published on their website and possible with the NEA at conferences that I was all of the above. As a direct, legal and proximate result of the offence above, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount to be proven at trial. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to harm the Plaintiff.

### IX.    The EIGHTH CLAIM FOR RELIEF: NEGLIGENCE SHOULD NOT BE DISMISSED

The elements for negligence are duty, breach, causation, and damages. See Adams v. Congress Auto Ins. Agency, Inc., 90 Mass. App. Ct. 761, 765 (2016). Plaintiffs are not required to provide more detailed factual allegations to state a claim for negligence. See generally Lopez v. Commonwealth, 463 Mass. 696, 701 (2012) ("detailed factual allegations are not required" to survive Rule 12(b)(6) motion to dismiss).

A claim for negligence does not have to be alleged with particularity. See DeWolfe v. Hingham Centre, Ltd., 464 Mass. 795, 798 n.8 (2013) (negligent misrepresentation); Mass. R. Civ. P. 9(b) (only fraud, mistake, duress, and undue influence must be pleaded with particularity). All that is required is a "short and plain statement of the claim." Mass. R. Civ. P. 8(a).

"To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Cracchiolo v. Eastern Fisheries, Inc., 740 F.3d 64, 69 (1st Cir. 2014) (quoting Jupin v. Kask, 447 Mass. 141, 146 (2006)); Lev v. Beverly Enterprises-Massachusetts, Inc., 457 Mass. 234, 239-240 (2010).

The facts stated state a claim for negligence. Prima-facie evidence has been presented above, the MTA knew I was not the current COO of PV, the MTA knew I was not using disguises and misrepresenting myself, the MTA knew involved in right-wing undercover and organization, the MTA knew I was not a convicted felon but published on their website and possible with the NEA at conferences that I was all of the above. As a direct, legal and proximate result of the offence above, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount to be proven at trial. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to harm the Plaintiff.

### x.  The NINTH CLAIM FOR RELIEF: HARRASMENT SHOULD NOT BE DISMISSED

To find for civil harassment, the court must find that the defendant committed an act or acts " of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that [did] in fact cause fear, intimidation, abuse or damage to property." See O'Brien v. Borowski, 461 Mass. 415 , 420 (2012); Seney v. Morhy, 467 Mass. 58 , 60 (2014).

The burden of proof is "preponderance of the evidence," not proof beyond a reasonable doubt. Frizado v. Frizado, 420 Mass. 592 , 597 (1995). Iamele v. Asselin, 444 Mass. 734 , 736 (2005). A victim's response to the conduct in question is viewed subjectively, as opposed to the reasonable person standard articulated in the criminal harassment statute. Compare G. L. c. 258E, § 1 (acts must "in fact cause fear, intimidation, abuse or damage to property"), with G. L. c. 265, § 43A, as appearing in St. 2010, c. 92, § 10 (pattern of conduct or series of acts that seriously harms that person and "would cause a reasonable person to suffer substantial emotional distress").

Prima-facie evidence has been presented above, the MTA knew I was not the current COO of PV, the MTA knew I was not using disguises and misrepresenting myself, the MTA knew involved in right-wing undercover and organization, the MTA knew I was not a convicted felon but published on their website and possible with the NEA at conferences that I was all of the above. As a direct, legal and proximate result of the offence above, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount to be proven at trial.

As such, all claims should survive the motion to dismiss and the case

permitted to proceed on its merits.

Dated: April 9, 2021                          Respectfully submitted,

John H. Landino, ProSe


By:  /s/ JOHN H. LANDINO
     JOHN H. LANDINO, PROSE