**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **JOHN LANDINO,** | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| **MASSACHUSSETTS TEACHERS ASSOCIATION, JOHN DOES 1-10,** | ) ) ) ) |
| Defendants. | ) ) ) ) ) |

Case No. 20-cv-11392 -DJC

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                           May 27, 2021

**I.     Introduction**

Plaintiff John Landino ("Landino") has filed this lawsuit against Defendants Massachusetts Teachers Association ("MTA") and John Does 1-10 (collectively, "Defendants") alleging defamation (Count I), conspiracy in violation of 18 U.S.C. § 241 (Count II), conspiracy in violation of 42 U.S.C. § 1985 (Count III), deprivation of civil rights in violation of 42 U.S.C. § 1983 (Count IV), a claim for violation of 42 U.S.C. § 1986 (Count V), civil conspiracy (Count VI), fraud (Count VII), negligence (Count VIII) and harassment (Count IX).  D. 7.  Defendants have moved to dismiss.  D. 13.  For the reasons stated below, the Court ALLOWS the motion as to Counts II-IX and DENIES it as to Count I.

**II.    Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim

1

for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

**III.   Factual Background**

The following summary is based upon the factual allegations in the amended complaint, which the Court must, for the purposes of considering MTA's motion to dismiss, accept as true. Landino worked as Chief Operating Officer for Project Veritas ("PV") from January 2014 until end of March of 2014. D. 7 at ¶ 4.

The MTA is a union with 110,000 members and approximately 400 local associations throughout Massachusetts. Id. at ¶ 9. The National Education Association ("NEA") and the MTA have a combined membership of approximately 2,400,000 union members nationwide. Id. at ¶ 10. The MTA and NEA are also affiliated and partially merged with the American Federation of Teachers ("AFT"), another union with approximately 1,700,000 members. Id. at ¶ 11. As alleged by Landino, the MTA, both singularly and as a collective enterprise of unions, have expressly aimed their political fund raising, lobbying, advocacy of progressive liberal causes and the "vilification" of those with conservative political views. Id. at ¶ 13.

As alleged, PV is a conservative media entity with long standing reports on and disputes with teachers' unions across the country. Id. at ¶ 18. During Landino's brief tenure at PV, however, there were no stories or investigations involving any teachers' unions. Id. at ¶ 19. On March 7, 2014, Gawker published a libelous and erroneous article smearing Landino which was shortly followed by Gawker's filing for bankruptcy as a result of losing a defamation case. Id. at ¶ 20. Gawker reported Landino was a convicted felon, owed taxes and child support—portraying him as a "repugnant individual." Id. Also on March 7, 2014, Landino was awarded full custody of his teenage daughters after a decade of proceedings in family court. Id. at ¶ 21. He owed no child support. Id. He received a full pardon for his 1993 felony conviction in May 2016. Id. at ¶ 25. During this same time, he petitioned the Gawker authors to remove the defamatory content. Id. at ¶ 26. The authors, in turn, hired an attorney who refused to cooperate with his requests citing that the company was still in bankruptcy court. Id. In late 2018, Landino paid all owed tax arrears stemming from the family court post-divorce litigation from 2005-2018. Id. at ¶ 31. Landino's last day of work at PV was March 31, 2014. Id. at ¶ 22. Since then, he has had no contact, connection, association, or affiliation with PV or any of its employees. Id.

On June 21, 2019, the MTA published a 15-page dossier about PV on their website. Id. at ¶ 38. The dossier contained allegedly libelous and erroneous information about Landino, his picture as well as hyperlinks to his Facebook profile and the Gawker article. Id. at ¶ 39. The dossier made allegedly untrue statements regarding Landino: (1) that he "often uses disguises and misrepresents" himself; (2) he is the Chief Operating Officer ("COO") of PV; (3) he is involved in "right-wing undercover operations and organizations." Id. at ¶¶ 41-43. The Gawker article was removed from the internet by the new owner on March 30, 2020 after Landino threatened legal action. Id. at ¶ 47. On April 29, 2020, Landino filed a civil case against the MTA and others in

state court in New Jersey. Id. at ¶ 48. On July 17, 2020, that court dismissed the MTA from the suit and advised Landino to file against the MTA in Massachusetts. Id. at ¶ 49.

As alleged, the MTA conspired with other organizations and individuals to harm Landino. Id. at ¶ 57. Landino's children attended high school in Massachusetts from 2017 to 2020 and were subjected to harm from the collective offenses intentionally committed to permanently destroy their father's reputation. Id. at ¶ 58. Internet search engines placed the MTA dossier in top selections when searching Landino's name, creating irreparable harm to him, his family and business. Id. at ¶ 59.

## IV.     Procedural History

Landino instituted this action on July 24, 2020, D. 1, and amended the complaint on October 16, 2020. D. 7. Defendants now have moved to dismiss. D. 13. The Court heard the parties on the pending motion on May 5, 2021 and took the matter under advisement. D. 23.

## V.      Discussion

### A.     Defamation (Count I)

"To prevail on a defamation claim, a plaintiff must 'establish that the defendants published a false statement about him to a third party that either caused him economic loss or was the type that is actionable without proof of economic loss.'" Driscoll v. Bd. of Trs. of Milton Acad., 70 Mass. App. Ct. 285, 295-96 (2007) (quoting Phelan v. May Dept. Stores Co., 443 Mass. 52, 55-56 (2004)). Landino alleges that because the MTA knew he was not the current COO of PV, was not using disguises or misrepresenting himself and was not a convicted felon yet "published on their website and possible with the NEA at conferences that [he] was all of the above," D. 7 ¶ 62, he has sustained economic and emotional injuries. Id. ¶ 63. At the crux of this claim lies the question of whether the alleged defamatory statements rise to the level of being actionable.

Landino alleges five statements published in the dossier were defamatory. First, he cites three statements referencing that he is the COO of PV. D. 7 ¶¶ 42, 44-45. Landino, did in fact work as COO for PV, but only from January 2014 until end of March of 2014, D. 7 ¶ 4, so not at the time of MTA's publication of the dossier. Although Landino was no longer employed as the COO of PV by the time of publication, "inaccuracy by itself does not make a statement defamatory," Yohe v. Nugent, 321 F.3d 35, 41 (1st Cir. 2003), instead there must be a showing that the alleged statement could subject plaintiff to contempt, hatred, scorn or tend to harm his standing in the community. Id. Moreover, part of plaintiff's showing for a defamation claim is that Defendants were at fault in making the statement (ranging from negligence for statements and private persons and actual malice for public figures). Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2008). Although, as MTA notes, the dossier warns readers of such potential inaccuracies stating that "some people may no longer be acting as or facilitating operatives," D. 14 at 7, D. 7-6 at 12, whether Landino has shown that Defendants are at fault for making such statement (i.e., at least negligent in doing so) and whether these statements 2, 4 or 5, D. 7 ¶¶ 42, 44-45, rise to the level of defamation, particularly in conjunction with the other alleged statements, is a matter of factual dispute that cannot be resolved on Defendants' motion to dismiss.

Next, Landino challenges the statement that he "often uses disguises and misrepresents" himself. D.7 ¶ 41, D.7-6 at 2. The first page of the PV dossier states that "[p]eople involved with Project Veritas often use disguises and misrepresent themselves." D.7-6 at 2. MTA responds that this statement was not specifically made with reference to Landino, and that PV's "own website confirms that it was established so that its founder could 'continue his undercover reporting work.'" D. 14 at 8. Landino contends that the statement concerning "people involved with" PV using disguises and misrepresenting themselves constitutes a published false or untrue statement

5

for the purposes of his defamation claim. "A statement is defamatory if it tends to harm the reputation of another either by lowering the esteem in which he is held or by discouraging others from associating with him." Pan Am Systems, Inc. v. Atlantic Northeast Rails and Ports, Inc., 804 F.3d 59, 64 (1st Cir. 2015). Landino at least plausibly alleges, his only burden at this stage, that such statement, D. 7 ¶¶ 39, 59, is defamatory in that it insinuating that he disguises or misrepresents his identity, both have potential to lower the esteem in which he is held and discourage others from associating with him. Further, "[i]n defamation actions, [this Court] looks to how the 'reasonable reader' would understand the 'statements at issue.'" Confirmis, Inc. v. Aetna, Inc., No. 1:20-cv-10890-IT, 2021 WL 1210293, at *8 (D. Mass. Mar. 31, 2021) (citing Scholz v. Delp, 473 Mass. 242, 251 (2015)). Arguably, a reasonable reader could understand that Landino, particularly given his leadership position at PV as COO, misrepresents himself.

Finally, Landino cites to a statement associated with his name appearing on a list of "[p]eople involved in right-wing undercover operations and organizations." D. 7 ¶ 43, D. 7-6 at 12. Although the mere use of the term right-wing may be "too vague to be cognizable as the subject of a defamation action," National Ass'n of Government Emp., Inc. v. Central Broadcasting Corp., 379 Mass. 220, 229 (1979); see Buckley v. Littell, 539 F.2d 882 (2d Cir. 1976), when viewing the statement in its totality, the use of the term "undercover" invokes the same insinuation and associations with disguised operation or identity as discussed above. The statement here insinuates that Landino is a part of not just a right-wing organization, but a right-wing undercover operation, crossing the threshold of potentially holding him "up to contempt, hatred, scorn, or ridicule" as to constitute defamatory statements as well as lead a reasonable reader to believe he is part of same. Tartaglia v. Townsend, 19 Mass. App. Ct. 693, 696 (1985).

Having plausibly alleged these defamatory statements and Defendants' (at least negligent) fault in publishing same, Landino must also plausibly allege economic loss or that this claim is actionable with such showing. Ravnikar, 438 Mass. at 630. Given Landino's allegations that the publication of the alleged defamatory statements harmed not only his family, but his business, D. 7 at ¶ 59, he has plausibly alleged that his claim fails into the category of claims in which he need not demonstrate proof of economic loss since the statements have the potential to "prejudice [his] profession or business." Ravnikar, 438 Mass. at 630.

For these reasons, Landino's defamation claim, Count I, survives Defendants' motion to dismiss.

> **B.** **Conspiracy (Counts II, III, VI)**

As to the conspiracy claims, Landino asserts a violation of 18 U.S.C. § 241 (Count II), a violation of 42 U.S.C. § 1985 (Count III) as well as civil conspiracy (Count VI).

> *1.* *There is no Private Right of Action under 18 U.S.C. § 241*

This Court must dismiss this claim as 18 U.S.C. § 241 is a criminal statute that does not provide for a private right of action. Mason v. Central Mass Transit Mgmt. v. Worcester Regional Transit Auth, 394 F. Supp. 3d 166, 173 (D. Mass. 2019) (noting that while "[p]laintiff mentions 18 U.S.C. § 241," same is "a criminal statute and there is no authority for permitting a private individual to initiate a criminal prosecution in his own name") (internal citation and quotes omitted). Accordingly, the Court dismisses Count II.

> *2.* *Conspiracy to Interfere with Civil Rights*

Landino also raises a claim under 42 U.S.C. § 1985 for conspiracy to interfere with civil rights (Count III), which arises under § 1985(3). To successfully plead a claim for conspiracy under Section 1985, a plaintiff must: (1) allege a conspiracy, (2) allege a conspiratorial purpose

aiming to deprive him of the equal protection of the laws, (3) identify an overt act in furtherance of the conspiracy and (4) show either injury to person or property or a deprivation of a constitutionally protected right. Perez-Sanchez v. Public Building Auth., 531 F.3d 104, 107 (1st Cir. 2008) (internal citations omitted). Further, "[p]leading a section [1985] conspiracy requires at least minimum factual support of the existence of a conspiracy." Parker v. Landry, 935 F.3d 9, 18 (1st Cir. 2019) (citation and internal quotes omitted). Even assuming that Landino has plausibly alleged a conspiracy, which Defendants dispute, this claim fails because claims arising out of 42 U.S.C. § 1985 require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Here, Landino had not pled any of the recognized discriminatory animus or conspiratorial purpose aiming to deprive him of the equal protection of the laws. To the extent that he intends to press that the conspiracy was based on discrimination based on political beliefs, 42 U.S.C. § 1985 "provides no remedy for animus on the basis of political beliefs." Perez-Sanchez, 531 F.3d at 109. For at least this reason, Landino has failed to allege sufficient facts to support a claim for conspiracy under 42 U.S.C. § 1985.

       3.     *Claim for Neglect to Prevent (Count V) Must Fail*

Landino also brings a claim for neglect to prevent under 42 U.S.C. § 1986. As an "existence of a conspiracy actionable under Section 1985" is a "prerequisite" to a claim under 42 U.S.C. § 1986, namely that a plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' actions, and . . . that the conspiracy is aimed at interfering with rights that are protected against private, as well as official, encroachment." Lowden v. William M. Mercer, Inc., 903 F. Supp. 212, 218 (D. Mass. 1995) (internal quotation marks and cites omitted). As discussed above, Landino has failed to allege

8

such § 1985 predicate plausibly and, therefore, Count V under 42 U.S.C. § 1986 also is not plausibly alleged and the Court dismisses this claim.

    4.    *Civil Conspiracy*

"Massachusetts law appears to recognize two variants of a cause of action for 'civil conspiracy.'" Mass. Laborers' Health & Welfare Fund v. Philip Morris Inc., 62 F. Supp. 2d 236, 244 (D. Mass 1999). The first, referred to as a "true conspiracy" is "rare." Fleming v. Dane, 304 Mass. 46, 50 (1939); see Aetna Casualty Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994). To assert a claim for civil conspiracy under this theory, Landino must plausibly allege that through "mere force of numbers acting in unison" the MTA and other alleged though unnamed co-conspirators exercised "some peculiar power of coercion of [him] which any individual standing in a like relation to [Landino] would not have had." Fleming, 304 Mass. At 50 (citations and internal quotations omitted). As plead, the complaint does not make any allegations that MTA, in combination with others, exercised any particular or peculiar power to of coercion to that a similarly situated person would not have had. Further, "[t]his cause of action seems to [be] applied principally to remedy direct economic coercion," which is neither alleged nor relevant in the present matter. Mass. Laborers' Health & Welfare Fund, 62 F. Supp 2d at 244.

The second iteration of civil conspiracy is "more akin to a theory of common law joint liability in tort." Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1564. Under this theory, MTA "may be held liable for actions done by others pursuant to a common design or with [MTA's] substantial assistance or encouragement." Mass. Laborers' Health & Welfare Fund, 62 F. Supp 2d at 244. Landino also fails to adequately allege a claim for relief under this theory. Although the complaint refers to MTA conspiring with the John Doe defendants and potentially the NEA, it fails to specifically plead how or what actions MTA's co-conspirators have done, who they are,

and how same is part of a "common design" or was brought about by "substantial assistance or encouragement" by the MTA.  See Byrnes v. Lukes, No. 2009-14032009, WL 8500163 at *10 (Mass. Super Oct. 27, 2009) (dismissing civil conspiracy claim where plaintiff's "allegation that the defendants acted in concert is merely a label and conclusion insufficient to survive a motion to dismiss") (citations omitted).

For these reasons, Landino's conspiracy claims fail.

### C.     Section 1983 Claim (Count IV)

"[T]o state a claim under § 1983, [Landino] must show that the alleged deprivation of [his] constitutional rights was committed by a person acting under color of state law." Rodriques v. Furtado, 950 F.2d 805, 813 (1st Cir. 1991).  First, Landino has not specifically alleged any particular constitutional violation, asserting that the deprivation here was the deprivation of his right to gainful employment and fear of losing life, liberty and the pursuit of happiness.  D.7 at ¶ 76.  To the extent Landino is asserting a violation of substantive due process for his claim, "[he has] to prove that [he] suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008).  Landino has not, however, alleged that the actions taken by MTA lead to or were even related to his end of employment with PV, which occurred before its publication of the dossier.  Even assuming *arguendo* that Landino had demonstrated a deprivation and property interest in current or future employment elsewhere, there are no allegations that suggests that such conduct by Defendants "shocks the conscience" which must be conduct that " at the very least be extreme and egregious, or . . . truly outrageous, uncivilized and intolerable." Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006) (citations omitted).

Also, Landino fails to allege state action, a necessary predicate for his § 1983 claim. The MTA cannot be considered to have acted under state law as "labor organizations have traditionally been considered private, not public, entities." Hovan v. United Brotherhood of Carpenters and Joiners, 704 F.2d 641, 642 (1st Cir. 1983). As labor unions "were born in an era of governmental hostility, not support, and their strength lies in the organized power of private individuals rather than governmental command . . . cases treating unions as if they [are government actors] are the exception, rather than the rule." Id. The John Doe defendants also appear, as alleged, to be private actors. To determine state action by a private actor, this Court looks to whether a private individual exercised powers "traditionally exclusively reserved to the state." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974). Even taking his allegations as true, there is nothing to suggest that Defendants were exercising powers traditionally reserved to the state.

For all these reasons, Landino has not plausibly alleged a § 1983 claim and the Court dismisses Count IV.

### D. Fraud (Count VII)

Landino alleges fraud against the MTA alleging that their publishing of the untrue information in the dossier was "intentional, willful, malicious and/or done with reckless disregard to harm" him. D. 7 at ¶ 90-92. To assert a claim for fraud, Landino must allege: (1) MTA made a false representation of a material fact (2) with knowledge of its falsity (3) for the purpose of inducing him to act thereon and (4) he relied upon on the representation as true and (5) acted upon it to his damage. See Dickey v. U.S. Bank Trust N.A., No. 19-12504, 2020 WL 4474273, at *4 (D. Mass. Aug. 3, 2020). Such allegations of fraud must comport with Fed. R. Civ. P. 9(b); i.e., the allegations must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Accordingly, Landino to allege "the time, place and content," of the false representations

11

giving rise to his state for fraud. Dickey, 2020 WL 4474273, at *4. Even assuming that such allegations were made here as to the alleged false statements about Landino, Landino does not plead how the MTA knew information to be false, how they intentionally sought to deceive him or how he relied upon any misrepresentations by the MTA to his detriment. Accordingly, this Court does not conclude that he has plausibly pled a claim for the tort of fraud.

### E.    Negligence Claim (Count VIII)

For a negligence claim, a plaintiff must show that: (1) he is owed a legal duty by the defendant; (2) there was a breach of that duty; (3) actual damage or injury occurred; and (4) there is causation between the breach and the damage. Doe v. Emerson Coll., 153 F. Supp. 3d 506, 514 (D. Mass. 2015) (citing Jorgensen v. Massachusetts Port Auth., 905 F.2d 515, 522 (1st Cir. 1990)). Here, Landino's claim fails on the first element as MTA has no legal duty to him. As MTA contends, and this Court agrees, Landino has not alleged any type of relationship between himself and the MTA that would give rise to a duty of care. See Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 41 (2009) (affirming dismissal pursuant to Fed. R. Civ. P. 12(b)(6) because defendant did not owe a duty to plaintiff). As such, Landino has not plausibly asserted a claim for negligence.

### F.    Harassment (Count IX)

Landino asserts a claim for harassment, but under Massachusetts law, as MTA notes, "harassment is not a recognized tort." Bogan v. City of Boston, 489 F.3d 417, 422 n.3 (1st Cir. 2007). Landino cites to Mass. Gen. L. c. 265, § 43A, a state criminal statute, that does not give rise to a private right of action. See Peixoto v. Russo, No. 16-cv-10428-DJC, 2016 WL 7410774, at *6 (Dec. 22, 2016) and cases cited. Accordingly, his claim for harassment must fail.

12

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss, D. 13, as to Counts II-IX and DENIES it as to Count I.

**So Ordered.**

/s/ Denise J. Casper<br>
United States District Judge