UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN LANDINO,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MASSACHUSSETTS TEACHERS ASSOCIATION, JOHN DOES 1-10,<br><br>　　　　　Defendants. | Case No. 20-cv-11392 -DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                       **August 9, 2022**

**I.     Introduction**

Plaintiff John Landino ("Landino") filed this lawsuit against Defendants Massachusetts Teachers Association ("MTA") and John Does 1-10 (collectively, "Defendants"). D. 7. The parties have now filed cross-motions for summary judgment on the only remaining claim, defamation (Count I). D. 76; D. 80. The MTA has also moved to strike Landino's motion for summary judgment, D. 84, and his response to the MTA's statement of material facts, D. 88. For the reasons stated below, the Court ALLOWS the MTA's motion for summary judgment, D. 76, DENIES Landino's cross-motion for summary judgment, D. 80, and DENIES the MTA's motion to strike Landino's cross motion, D. 84, as moot, and DENIES in part and ALLOWS in part MTA's motion to strike Landino's response to MTA's statement of undisputed facts, D. 88.

**II.     Standard of Review**

A court grants summary judgment where there is no genuine dispute as to any material fact

1

and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citation omitted). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Rosciti v. Ins. Co. of Pa., 659 F.3d 92, 96 (1st Cir. 2011) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). If the movant meets its burden, the nonmovant "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

The Court views the record "in the light most favorable to the non-moving part[y]" and draws all reasonable inferences in the nonmovant's favor. Pineda v. Toomey, 533 F.3d 50, 53 (1st Cir. 2008). The nonmovant, however, "may not rely on conclusory allegations, improbable inferences, or unsupported speculation" to defeat a motion for summary judgment, "but must, instead, 'set forth specific facts showing that there is a genuine issue for trial.'" Id. at 53–54 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The nonmovant must offer "definite, competent evidence to defeat a properly supported motion for summary judgment." Burns v. State Police Ass'n of Mass., 230 F.3d 8, 9 (1st Cir. 2000).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the Court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107

(1st Cir. 2001). "When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991).

### III.  Factual Background

The following facts are undisputed.[1]  The MTA is a labor union composed of Massachusetts teachers, faculty, professional staff and education support professionals who work for public school systems, colleges and universities.  D. 78 ¶ 2; D. 82 ¶ 2.  The MTA is a state affiliate of the National Education Association ("NEA"), a national labor union.  D. 78 at ¶¶ 3–4; D. 82 ¶¶ 3-4.

Established in 2011, Project Veritas ("PV") is a non-profit conservative media outlet that conducts "undercover reporting" id. at ¶¶ 6–8, concerning "subjects that impact democratic interests," id. at ¶ 9.  PV has long-standing history of public disputes with teachers' unions.  Id. at ¶ 6; D. 7 ¶ 18.  Landino began working as PV's Chief Operating Officer ("COO") in January 2014.

---

[1] Landino disputed certain of MTA's statement of facts, D. 82.  MTA moves to strike Landino's response to MTA's statement of facts, D. 83, or, alternatively deem MTA's statement of undisputed facts admitted.  D. 88.  The Court declines to strike Landino's response to MTA's statement of facts, but it nevertheless deems the facts in MTA's statement of facts admitted because Landino did not provide supporting evidence, as required by the Federal Rules of Civil Procedure, Fed. R. Civ. P. 56(c)(1), and the District of Massachusetts Local Rules, L.R. 56.1, see Rodio v. R.J. Reynolds Tobacco Co., 416 F. Supp. 2d 224, 227 (D. Mass. 2006) (deeming defendant's facts admitted where plaintiff disputed facts but failed to present supporting evidence to controvert assertions in defendant's statement of facts) for the facts he contends are disputed.  See, e.g., D. 82 ¶¶ 6-9, 13-14, 17-19, 24-25, et seq.  The same is true as to his reliance upon the alleged facts in support of his cross motion for summary judgment.  See D. 90 at 2-3 (discussing the unsupported statements in Landino's statement of fact).  Accordingly, the Court DENIES MTA's motion to strike in part, D. 88, but ALLOWS it to the extent it sought the alternative remedy of deeming its statement of facts admitted for those Landino disputed without providing any supporting evidence as required.

D. 78 ¶ 11; D. 82 ¶ 11. Landino's responsibilities while employed by PV included fundraising, hiring, paying bills and managing staff. Id. at ¶ 13; D. 79-1 at 10 (stating that he was a "glorified office manager trying to make sure that official things were completed in a timely manner"). Prior to working at PV, Landino was convicted of felony narcotics possession in Connecticut. D. 78 ¶ 14.

On March 7, 2014, Gawker published an article about PV titled "James O'Keefe Employs a Convicted Felon," id. at ¶ 16; D. 82 ¶ 16, while Landino remained COO at PV. Id. at ¶ 17. The article states that Landino was "active in making fundraising queries and pitching sting ideas, introducing himself as the group's chief operating officer." Id. at ¶ 17 (quotation omitted). Gawker reported, among other things, that Landino had a "felony narcotics record, thousands of dollars in unpaid child support and tens of thousands of dollars in IRS tax liens." Id. at ¶ 18. Landino was subsequently fired by PV on March 31, 2014. Id. at ¶ 20; D. 82 ¶ 4. Approximately two years later, in 2016, Landino received a pardon for his felony conviction. D. 78 ¶ 15; D. 82 ¶ 15. Thereafter, Landino contacted one of the authors of the Gawker article requesting a correction to reflect that Landino had since been pardoned. Id. at ¶ 19; D. 82 ¶ 8; D. 79-2 at 109–10.

The website Project Veritas Exposed ("PVE") posts content related to PV. D. 78 ¶ 16; D. 82 ¶ 16. In or around June 2018, PVE posted a profile to its site about Landino, identifying him as the COO of PV from 2013 to 2014 and quoting the 2014 Gawker article regarding Landino's criminal history, tax liens and unpaid child support. D. 78 ¶ 22; D. 82 ¶ 22; D. 79-2 at 122. The profile includes an update that Landino was pardoned in May 2016. D. 78 ¶ 23; D. 82 ¶ 23. PVE is not an MTA website and MTA does not control it. D. 78 ¶ 25.

On June 19, 2019, the NEA sent an email to its state affiliate coordinators, including MTA's, in advance of its annual meeting regarding general guidance to avoid "sting" operations

4

by right wing activists, including tips, templates and signage requiring non-NEA guests to identify themselves.  Id. at ¶¶ 26, 32; D. 82 ¶¶ 26, 82.  Attached to the email was a document about PV ("Look Book"), containing the names and photographs of approximately seventy-five individuals known or believed to be associated with PV.  D. 78 ¶¶ 31–32; D. 82 ¶¶ 31-32.   According to MTA, the Look Book was prepared in response to an incident in which a recording of an NEA state affiliate member was distributed social media, portraying the affiliate in a negative way.  D. 78 ¶ 33.  The Look Book states that "[p]eople involved with Project Veritas often use disguises and misrepresent themselves."  D. 79-2 at 123.  Landino's name and title as COO are included in a list of "[p]eople involved in right-wing undercover operations and organizations," along with links to his Facebook page and the Gawker article.  Id. at 133–34; D. 78 ¶ 41; D. 83 ¶ 23.  The Look Book also includes a picture of Landino, with his name and COO title.  D. 79-2 at 128; D. 78 ¶ 41; D. 82 ¶ 41; D. 83 ¶ 23.  The Look Book also notes to "please be cautious — some people who are not operatives may coincidentally have the same name, and some people may no longer be acting as or facilitating operatives."  D. 78 ¶ 42; D. 82 ¶ 42.

In June 2019, Jessica Hiemenz-Woodbury, an MTA conference service administrator, received the June 19, 2019 email and forwarded it to Mary Giligallon ("Giligallon"), MTA Director of Governance.  D. 78 ¶¶ 36–37.  In her role, Giligallon was responsible for the MTA delegate's attendance at the NEA annual meeting, worked with MTA's communications department and directed content on the MTA website regarding the meeting.  Id. at ¶ 37; D. 82 ¶ 37.  Giligallon testified that she received the Look Book from the NEA, which she considered to be "a very reputable source," D. 78 ¶ 38, and therefore, she "had no reason to question the information," D. 78 ¶ 40.  According to Giligallon, the affiliation between the NTA and the NEA "verified" for her that the Look Book contained information that MTA member delegates attending

the annual meeting should know.  D. 78 ¶ 39; D. 79-3 at 4.  The MTA posted a link to the Look Book on its website for its members who were going to attend the annual NEA meeting.  D. 78 ¶ 45; D. 82 ¶ 45.  The MTA had a security interest in ensuring that only registered attendees and invited guests came its events.  D. 78 ¶ 48.  Close to one year later, on April 1, 2020, Landino contacted the MTA requesting that it remove the Look Book from its website.  D. 78 ¶ 52; D. 82 ¶ 52.  The MTA removed the link to the Look Book the same day.  D. 78 ¶ 53; D. 82 ¶ 53.  Google Analytics data show zero views of the Look Book on the MTA's website until April 1, 2020, the day Landino requested that the MTA remove it.  D. 78 ¶ 54.

### IV.     Procedural History

Landino instituted this action on July 24, 2020, D. 1, and later amended the complaint, alleging several counts, Counts I–IX, including a claim of defamation (Count I), D. 7.  The Court allowed the MTA's motion to dismiss as to Counts II through IX, D. 24, and later denied Landino's motion for leave to file a second amended complaint, D. 59.  The MTA has now moved for summary judgment on the remaining defamation claim, Count I.  D. 76.  Landino has filed a cross motion for summary judgment as to this claim.  D. 80.  The MTA subsequently moved to strike Landino's motion for summary judgment, D. 84, and his response to the MTA's statement of material facts, D. 88.  The Court heard oral argument on the motions and took these matters under advisement.  D. 95.

### V.      Discussion

#### A.      **Defamation Claim (Count I)**

Landino alleges that the MTA made five defamatory statements by posting the Look Book to its website.  D. 81 at 5.  To succeed on a defamation claim, a plaintiff must show that:  (1) the defendant made a false statement about him to a third party; (2) the statement was defamatory in

6

that it "could damage the plaintiff's reputation in the community"; (3) the defendant was "at fault in making the statement"; and (4) the statement either caused economic loss or is actionable without economic loss. See Walker v. President & Fellows of Harvard Coll., 82 F. Supp. 3d 524, 532 (D. Mass. 2014) (quoting Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012)).

Landino claims the following statements contained in the Look Book constitute defamation:

| Statement 1 | Plaintiff [sic] . . . "often uses [sic] disguises and misrepresents themselves" |
| Statement 2 | Plaintiff is the "COO" of PV |
| Statement 3 | Plaintiff is [sic] "People involved in right-wing undercover operations and organizations" |
| Statement 4 | Plaintiff is the "COO" of PV |
| Statement 5 | Plaintiff [sic] name printed "John Landino (COO, PV)" with text "COO" hyperlinked to the Gawker article |

D. 81 at 5. The MTA argues that based upon the now developed record, Landino's sole remaining claim fails as a matter of law as to all five statements. D. 77 at 10–11. The Court agrees.

        1.     *The Statements were Not False or Did Not Concern Landino*

To start, Statements 2, and 4—that Landino was the COO of PV—are factually true, and therefore, Landino cannot establish that they constitute defamation. To the extent that Landino also objects to the portion of Statement 5 that identifies him as COO, D. 81 at 5, this is also factually true. Landino claims these statements are false, id., because his employment with PV ended in March 2014, D. 7 ¶ 4. This argument is unavailing. Here, even though Landino no longer worked for PV at the time that the MTA published the link to the Look Book on its website, the representation contained in Statements 2, 4 and 5 that Landino was the PV COO does not rise to the level of defamation because Landino was, at one time, COO of PV. D. 78 ¶ 11; see Rogatkin ex rel. Rogatkin v. Raleigh Am., Inc., 69 F. Supp. 3d 294, 298 (D. Mass. 2014) (stating that "[t]he

publication of true but historical facts (even if outdated) about a person cannot be defamatory as a matter of law").

As to Statements 1 and 3, Landino has not shown that either statement is false. D. 77 at 12-13. "Only statements that are provably false are actionable." Veilleux v. Nat'l Broad. Co., 206 F.3d 92, 108 (1st Cir. 2000); Walker, 82 F. Supp. 3d at 532 (citing Massachusetts law). Moreover, neither statement specifically concerns Landino. "It is a fundamental principle of the law of defamation that a plaintiff must show, *inter alia*, that alleged defamatory words published by a defendant were of and concerning the plaintiff." Alharbi v. Theblaze, Inc., 199 F. Supp. 3d 334, 354 (D. Mass. 2016) (quoting New England Tractor–Trailer Training of Conn., Inc. v. Globe Newspaper Co., 395 Mass. 471, 474 (1985)). "In Massachusetts, the test whether [an alleged defamatory statement] is of and concerning the plaintiff is met by proving either (1) that the defendant intended the words to refer to the plaintiff and that they were so understood or (2) that persons could reasonably interpret the defendant's words to refer to the plaintiff and that the defendant was negligent in publishing them in such a way that they could be so understood." HipSaver, Inc. v. Kiel, 464 Mass. 517, 528 (2013) (alteration in original) (quoting ELM Med. Lab., Inc. v. RKO Gen., Inc., 403 Mass. 779, 785 (1989)). "[W]here the alleged defamatory statement is directed at a group, rather than a particular person, an individual member of the defamed class cannot recover for defamation unless the group or class is so small that the matter can reasonably be understood to refer to the member, or . . . the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.'" HipSaver, 464 Mass. at 528 (second alteration in original) (quoting Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 430 n.6 (1991)); see Arcand v. Evening Call Pub. Co., 567 F.2d 1163, 1164-65 (1st Cir. 1997) (discussing Massachusetts law).

8

Statement 1 does not refer to Landino specifically, D. 79-2 at 123 ("[p]eople involved in [PV] often use disguises and misrepresent themselves"). Indeed, Statement 1 refers generally to people who are, or who were at some point, associated with PV. Id. Likewise, Statement 3 describes a group of approximately seventy-five listed individuals, including Landino, as "[p]eople involved in right-wing undercover operations and organizations." Id. at 133–34. Although Landino is included in the list of individuals, id. at 134, Statement 3 is followed by a disclaimer, located directly below the statement, that "some people . . . may no longer be acting as or facilitating operatives," id. at 133. Given the qualified nature of these statements, the fact that neither specifies Landino and that even when Landino's name is listed, it is as part of a large group, and neither statement have been shown to be false, Statements 1 and 3 also fail on the first requisite element for defamation.

        2.      *The Statements Were Not Defamatory*

Whether a communication is reasonably susceptible to a defamatory meaning is a question of law, and "this interpretation requires that the court examine the statement in its totality in the context in which it was uttered or published." Foley v. Lowell Sun Pub. Co., 404 Mass. 9, 11 (1989) (citation and internal quotation marks omitted). "A false statement that would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community would be considered defamatory." Phelan v. May Dep't Stores Co., 443 Mass. 52, 56 (2004) (internal quotation marks omitted). Landino may have plausibly alleged as much at the pleading stage to survive the motion to dismiss, D. 24 at 6-7, but now on a developed record at the summary judgment stage, he has failed to sustain his burden as

to this requisite element. That is, as discussed above, Landino has failed to establish that the statements that concern him are false or and thus, he cannot show that same are defamatory. Id. [2]

### 3. MTA Was Not at Fault for Posting a Link to the Look Book

Even assuming *arguendo* that any of the statements were both false and defamatory, Count I still fails because Landino has not shown that the MTA was at fault in making any of the alleged defamatory statements. Landino is private figure, and therefore, he only needs to demonstrate that the MTA was negligent. See Hi-Tech Pharms., Inc. v. Cohen, 277 F. Supp. 3d 236, 248 (D. Mass. 2016) (quoting New England Tractor–Trailer Training of Conn., Inc., 395 Mass. at 477)).

To satisfy this element of the claim, a plaintiff alleging defamation must demonstrate that the defendant failed "to act reasonably in checking on the truth or falsity of the [challenged] communication before publishing it[,] keeping in mind [c]ustoms and practices within the [defendant's] profession." Id. at 248–49 (alterations in original) (internal quotation marks omitted) (quoting Appleby v. Daily Hampshire Gazette, 395 Mass. 32, 37 (1985)).

Here, it is undisputed that the MTA "receiv[ed] the Look Book from the NEA." D. 78 ¶ 45; D. 82 ¶ 45. Because of their "affiliation and long standing relationship, the NEA is a trusted and reliable source of information for the MTA," D. 78 ¶ 4; D. 82 ¶ 4, such that it was not

---

[2] Also, as to Statement 5, even assuming *arguendo* that Landino had shown that it was defamatory because it includes a hyperlink to the Gawker article which allegedly contains defamatory statements, D. 81 at 4-5, this claim would still fail because he cannot show publication by MTA. Although the republication exception to the single publication rule provides that "[a]ny future republication of the [alleged] false statements . . . could from the basis for a new cause of action against the republisher," Wolsfelt v. Gloucester Times, 98 Mass. App. Ct. 321, 329 (alterations in original) (quoting Flynn v. Associated Press, 401 Mass. 776, 780 n.5 (1988)), it appears that the majority of courts that have squarely addressed whether a hyperlink constitutes republication have concluded that it does not. See id. at 329 n. 12 and cases cited; see, e.g., Lokhova v. Halper, 995 F.3d 134, 143 (4th Cir. 2021) (concluding that the "public policy supporting the single publication rule and the traditional principles of republication dictate that a mere hyperlink, without more, cannot constitute republication"); Lindberg v. Dow Jones & Co., Inc., No. 20-cv-8231, 2021 WL 3605621, at *5 & n.66 (S.D.N.Y. Aug. 11, 2021) (same).

10

unreasonable for the MTA to believe in the accuracy of the Look Book and post a link to the document on its website without conducting an independent investigation to verify the information contained therein. This is not a case where "a reasonable jury could find" that the MTA posted the link to the Look Book with "negligent disregard for [its] veracity." See Wofse v. Horn, 523 F. Supp. 3d 122, 134 (D. Mass. 2021) (citing Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003)). Based upon the undisputed record, a reasonable jury could not find that the MTA had or should have had "reasonable doubt as to the veracity of [the Look Book]." Cf. Jones v. Taibbi, 400 Mass. 786, 799–800 (1987) (noting that the defendant's reports were based upon statements of an informant whom the defendant knew had a history of being unreliable in the past and, "[m]ore importantly," that the defendant was aware of inconsistencies in the informant's allegations but published them anyway). Here, there are no facts to show that the MTA had any reason to doubt whether the Look Book contained truthful statements. Accordingly, Landino has failed to show that the MTA was at fault for publishing the statement.

For all of these reasons, MTA is entitled to summary judgment on Landino's defamation claim and Landino's cross motion for summary judgment is denied.[3]

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS MTA's motion for summary judgment, D. 76, and DENIES Landino's cross motion for summary judgment, D. 80.[4]

**So Ordered.**

/s/ Denise J. Casper

---

[3] Given that, on the undisputed record, this claim fails in regard to the elements of the claim discussed above, the Court need not reach whether the allegedly defamatory statements caused economic loss or are actionable without economic loss or MTA's alternative argument about its conditional privilege.

[4] In light of this ruling, the Court DENIES MTA's motion to strike Landino's motion for summary judgment, D. 84, as moot.

United States District Judge